CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 21, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Megan Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NOAH LEE PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00072 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| C.O. NELSON, *et al.*, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Noah Lee Price, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants C.O. Nelson, C.O. Lusk, and LT. Blaha. (*See* Compl. [ECF No. 1].) This matter is before the court on Defendants' motion for summary judgment.[1] (ECF No. 20.) For the following reasons, the court will grant the motion.

## I. BACKGROUND

This matter stems from events that allegedly occurred while Price was incarcerated at the Wallens Ridge State Prison ("Wallens Ridge") in Big Stone Gap, Virginia. (*See* Compl. at 3.) Defendants are correctional officers at Wallens Ridge holding various ranks. (*See id.* at 1–2.) Price makes the following allegations in his complaint.[2]

---

[1] The motion was originally filed by Nelson and Lusk. (*See* ECF No. 20.) But on August 17, 2026, Blaha filed a motion for extension of time to move for summary judgment (ECF No. 23) and requested that, because Price's allegations "are directed at all Defendants generically[,]" the motion for summary judgment should apply to him as well. (ECF No. 24 at 2 (citing Fed. R. Civ. P. 56(f)(1)). The court has granted Blaha's motion. (*See* ECF No. 25). Accordingly, the court will treat the motion as having been filed by all Defendants.

[2] Price's factual allegations come from his complaint, which is not verified (*see* Compl.), and therefore cannot "be considered for purposes of summary judgment." *Monchéry v. Dryden*, No. 7:23-cv-00461, 2025 WL 2842399, at *8 (W.D. Va. Oct. 7, 2025) (citing *Goodman v. Diggs*, 986 F.3d 493, 499 (4th Cir. 2021)); *see also Goodman*, 986 F.3d at 495 n. 2 ("A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020))). But because Price's factual allegations provide context for his claims, the court will nevertheless summarize his allegations.

Price alleges that, from December 2, 2024, to December 14, 2024, he and his cellmate were left in a cell without running water and "had nothing to drink but the one juice bag in the morning." (*Id.* at 4.) According to Price, he and his cellmate "begged" Wallens Ridge officials to move them and/or "get [them] drinking water for 13 days straight." (*Id.*) Price claims that, at the time, his body ached, his "lips were cracked so bad they were bleeding[,]" and that he did not have any water with which to take his medication. (*Id.*) Price also claims that he lacked the water necessary for him to cook certain meals he was served based on his religious diet. (*Id.*) According to Price, Defendants "refused" to move him and his cellmate to a different cell even though two empty cells were available. (*Id.*)

Price claims that he and his cellmate asked Lusk and Nelson "to get . . . Blaha[,] but that the officers "refused" to do so. (*Id.*) Plaintiff further claims that on December 14th, he and his cellmate saw "maintenance" in the pod and "begged" them to fix the "sink/toilet." (*Id.*) That same day, at approximately 10:00 p.m., the toilet in Price's cell allegedly started to overflow, causing three to six inches of water and feces to spill onto the floor. (*Id.* at 5.) According to Price, he and his cellmate "begged" Nelson and Lusk "all night" to move them from the cell but the officers "refused" and did not notify higher ranking officers about the issue. (*Id.*) Price further claims that an unnamed individual placed "orange pants" on the outside of the cell's door, "trapping the infected water inside [the] . . . cell." (*Id.*) Then, at around "shift change[,]" Lusk allegedly came by Price's cell and said, "I[']m not helping you guys with anything because y[']all wrote me up in a grievance about the water the night before." (*Id.*)

According to Price, Nelson eventually "cut[] the water off," but the cell flooded once more. (*Id.*) Price alleges that he and his cellmate had to use their food bowls to "scoop" the

water off the cell floor and use their bath towels and clothing to clean up the water. (*Id.*) Price further alleges that he and his cellmate were forced to stay in the flooded cell for three to four hours and that "[t]hey" did not provide Price or his cellmate cleaning supplies for the cell. (*Id.*) Additionally, Price claims that he and his cellmate "have been skipped on the phone for about a month" and prevented from accessing "[t]he kiosk to which is [their] 'legal mail'" in retaliation for filing grievances against Defendants. (*Id.* at 6.)

On December 20, 2024, Price executed his complaint. (*See id.* at 7.) Price claims that Defendants' actions constituted cruel and unusual punishment, negligence, and retaliation. (*See id.* at 4, 6.)

On July 10, 2026, Defendants filed their motion for summary judgment (ECF No. 20). Defendants argue that they are entitled to summary judgment on Price's claims because he failed to exhaust administrative remedies before bringing this action, as required by the Prison Litigation Reform Act (the "PLRA"). (ECF No. 21.) Although Price was provided notice of the motion pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (per curiam) (*see* ECF No. 22), he did not file any response in opposition.[3] The motion is accordingly ripe for disposition.

## II. STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court

[3] Indeed, Price appears to have abandoned this case, as he has not filed anything with the court since April 29, 2025. (*See* ECF No. 10.)

should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary

judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

## III. ANALYSIS

Defendants argue that summary judgment is proper here because Price failed to exhaust his available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). (*See* ECF No. 21 at 1.) For the following reasons, the court agrees with Defendants and will accordingly grant the motion for summary judgment.

### A. Exhaustion of Administrative Remedies

The PLRA requires inmates to exhaust all available remedies before filing lawsuits challenging prison conditions. *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). This requirement "gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched." *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). To adequately exhaust administrative remedies, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); *see also Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) (per curiam) ("The PLRA 'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so *properly*,' to allow the agency a full and fair opportunity to address the issues on the merits.") (quoting *Woodford*, 548 U.S. at 90, 93) (emphasis in original). "'Proper exhaustion,' therefore, 'demands compliance with an agency's deadlines and other critical

procedural rules.'" *Woodhouse*, 741 F. App'x at 178 (quoting *Woodford*, 548 U.S. at 90). "And given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies, even to take into account 'special circumstances' that might otherwise justify noncompliance with procedural requirements." *Moss*, 19 F.4th at 621 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)); *see also Woodhouse*, 741 F. App'x at 177–78 ("[C]ourts have no discretion to waive the exhaustion requirement.") (citing *Woodford*, 548 U.S. at 85). Still, "because 'failure to exhaust is an affirmative defense under the PLRA,' defendants bear the burden of establishing that a prisoner has failed to exhaust his administrative remedies." *Woodhouse*, 741 F. App'x at 178 (quoting *Jones*, 549 U.S. at 216).

"[T]he only exception to the PLRA's exhaustion requirement is when an administrative remedy is not 'available.'" *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) (citing *Ross*, 578 U.S. at 642). An administrative remedy is unavailable, and thus the PLRA does not require exhaustion, if the would-be remedy is "officially on the books" but is not "capable of use to obtain relief." *Moss*, 19 F.4th at 621 (quoting *Ross*, 578 U.S. at 643). A prisoner may demonstrate that an administrative remedy is "unavailable" by showing that (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (e.g., "if administrative officials have apparent authority, but decline ever to exercise it"), (2) it is "so opaque that it becomes, practically speaking, incapable of use" (e.g., where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"), or (3) "the prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" (e.g., where "officials misl[ead] or threate[n] individual inmates so as to prevent their use of otherwise proper procedures"). *Ross*, 578 U.S. at 643–44. The Fourth Circuit has stated that "[j]udges

may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Woodhouse*, 741 F. App'x at 178 (citations omitted).

**B. Operating Procedure 866.1**

In support of their motion for summary judgment, Defendants provided the affidavit of C. Vilbrandt, the Grievance Coordinator for Wallens Ridge. (ECF No. 21-1 at 1–8.) Vilbrandt's affidavit is accompanied by Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 866.1 and Price's grievance records related to his claims against Defendants. (*Id.* at 9–37.) In their declaration, Vilbrandt explains the administrative process for resolving disputes that was in effect for VDOC inmates at the time of the events described in the complaint. (*See id.* at 1–8.) As Vilbrandt explains, OP 866.1 generally governs the inmate grievance procedure and that "all issues are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, issues related to institutional disciplinary hearings, State and Federal court decisions, laws, and regulations, and matters beyond the control of the [VDOC]." (*Id.* at 2.)

According to OP 866.1, the first step in the inmate grievance procedure is to attempt to resolve the issue informally, first orally and then by submitting an informal written complaint. (*Id.* at 12.) The written complaint must be received by the Institutional Ombudsman or designated staff within 15 days of the incident leading to the complaint. (*Id.* at 2–3, 13.) Prison staff are to provide a written response on the complaint form within 15 days. (*Id.* at 3, 14.)

If the inmate is dissatisfied with the response or if staff fail to provide a written response within 15 days, the inmate can submit a regular grievance on the issue within 30 days

of the event about which he is complaining. (*Id.* at 3, 14.) A regular grievance must comply with the requirements of OP 866.1 to be accepted at intake. (*Id.* at 4, 15.)

A regular grievance that does not meet the filing requirements will be returned to the inmate within two business days of its receipt and will include the reason for the rejection and instructions on how to correct and resubmit the form. (*Id.* at 4) If the inmate desires a review of the intake decision, he may send the returned grievance form to the Regional Ombudsman. (*Id.*) Pursuing an intake appeal of a rejected grievance, and nothing more, does not constitute complete administrative exhaustion; it is merely a step *toward* exhaustion. (*Id.*); *Jackson v. Barksdale*, No. 7:17-cv-00031, 2017 WL 3446259, at *5 (W.D. Va. Aug. 10, 2017) ("[S]uch final intake decisions do not constitute exhaustion of administrative remedies."), *aff'd*, 707 F. App'x 786 (4th Cir. 2018) (per curiam); *Hailey v. Clary*, No. 7:17-cv-00260, 2018 WL 2123623, at *2 (W.D. Va. May 8, 2018) (same). If the regular grievance does not meet the criteria for acceptance, and the review by the Regional Ombudsman does not result in intake into the grievance process, the issue must be resubmitted in accordance with OP 866.1 for acceptance. (*See* ECF No. 21-1 at 4.) There is no further review of the intake decision. (*See id.*)

If regular grievance is accepted for intake, the Facility Unit Head or Assistant Facility Unit Head prepares a Level I response to the grievance within 30 days. (*Id.* at 4, 18.) An inmate who is not satisfied with the outcome of his Level I review may appeal that decision to Level II. (*Id.* at 4.) Level II reviews are conducted by either the Regional Administrator, the Health Services Director, the Director of Offender Management Services, the Chief of Corrections Operations, the Superintendent for Education, or the Assistant Superintendent for Education Operations in the Superintendent's absence, and those responses must be issued within 20 days. (*Id.* at 4, 20.) Level II is the final level of review. (*See id.* at 4.) Regular grievances must be

accepted at intake and then appealed through all levels of available review without satisfactory resolution of the issue to satisfy the exhaustion requirement prior to filing suit. (*See id.*)

Additionally, an inmate may file an emergency grievance if he believes that there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm. (*Id.* at 5.) Filing an emergency grievance alone does not satisfy the exhaustion requirement. (*Id.* at 5.)

**C. Price's Submissions**

Vilbrandt's review of Price's grievance file at Wallens Ridge reveals that Price made one submission related to his claims against Defendants. (*See id.* at 5–6.) In a written complaint dated December 14, 2024, Price stated as follows:

> We was [*sic*] out [of] water from Dec[.] 2nd to Dec. 13th. These CO's refused to bring us water to drink[.] We had no water to take or [*sic*] meds or brush are [*sic*] teeth[.] We asked every CO to fix are [*sic*] water[.] We requested to move [but] they left us in here. Then on Dec[.] 13th are [*sic*] tolyot [*sic*] back flowed and left six inches of water and fieces [*sic*] on our floor[.] CO Nelson put orange pants under our door to keep the water in our cell[.] They refused to get [a] Sgt[.] or move us[.] They never cleaned out the fieces [*sic*].

(*Id.* at 37) (capitalization corrected).

In a response dated December 27, 2024, Unit Manager Caughron stated as follows:

> I was informed you didn't have water on 12/13/24 and placed a work order. This was fixed on 12/13/24. Night shift supervisors will address proper procedures with their staff.

(*Id.*) According to his grievance file, Price did not submit a regular grievance related to this written complaint. (*See id* at 26-37.)

**D. Discussion**

Here, the undisputed facts in the record show that Price failed to exhaust his administrative remedies under OP 866.1. As noted, though Price filed a written complaint on December 14, 2024, that relates to his claims against Defendants, he did not attempt to file a regular grievance related to the complaint. Under OP 866.1, Price failed to exhaust his administrative remedies when he failed to submit a regular grievance related to his written complaint. (*See* ECF No. 21-1.) Moreover, Price has not shown that administrative remedies were unavailable to him. *See Strickland v. Wang*, No. 7:11-cv-00358, 2013 WL 866075, at *1 n.1 (W.D. Va. Mar. 7, 2013) ("The burden of showing that administrative remedies were unavailable lies with the plaintiff" (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (per curiam).[4] As the undisputed evidence shows that Price failed to exhaust his administrative remedies, the court will enter judgment in Defendants' favor as to Price's claims.

**IV. CONCLUSION**

For the reasons stated above, the court will grant Defendants' motion for summary judgment.

[4] Recently, the Supreme Court held that an inmate is entitled to have a jury determine whether administrative remedies were available to him "when that dispute is intertwined with the merits of the underlying suit." *Perttu v. Richards*, 605 U.S. 460, 464, 479 (2025). But such circumstances are not present here. Price's claims against Defendants are based on their alleged failure to move him to a cell with running water and remedy the flooded cell as well as their alleged denial of access to phone services and legal mail in retaliation for Price having filed grievances against Defendants. (*See* Compl.) And though Price discussed the filing of grievances in his complaint, he asserts no claims against Defendants based on his lack of access to grievance procedures or other administrative remedies. (*See id.*); *see also Allen v. Hurley*, No. 7:21-cv-00641, 2025 WL 2713763, at *1 n.2 (determining that the plaintiff's "underlying suit—which alleges claims related to an allegedly false disciplinary charge, alleged due process violations in the subsequent disciplinary hearing, and allegations of cruel and unusual punishment[]—is not intertwined with the questions of whether [the plaintiff] exhausted his administrative remedies"). Regardless, "there is no material factual dispute regarding [Price's] exhaustion that would compel submission of that question to a jury." *Id.* (citing Fed. R. Civ. P. 56).

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 21st day of September, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE